## RESPONSIBILITY OF TRACTION COMPANY FOR COLLISION OF CAR WITH AUTOMOBILE.

Circuit Court of Hamilton County.

THE OHIO TRACTION CO. v. LOUISE BREITHOLLE.[*]

Decided, June, 1910.

*Negligence—Collision Between Electric Car and Automobile Results in Injury to Passengers on the Car—Motorman Exonerated from Blame.*

Weight of evidence as to responsibility for a collision between an electric car and an automobile, resulting in injury to passengers on the car.

*George H. Warrington,* for plaintiff in error.
*S. A. West* and *Frazier & Hicks,* contra.

GIFFEN, P. J.; SWING, J., and SMITH, J., concur.

The plaintiff, Louise Breitholle, was a passenger on one of the cars of the defendant company, and after describing a collision between an automobile and a car operated by the Cincinnati Traction Co. while both were descending Vine street hill, which as alleged left the automobile across the track upon which the defendant's car was ascending, and about one hundred feet in front of the car, charges negligence as follows:

---

[*] For opinion in another case growing out of the same accident, see 13 C.C.(N.S.), 67.

"That after said automobile had been so thrown on and near the track upon which defendant's car was being run, all of which the defendant then and there had the means of knowing and did know, the defendant then and there carelessly and negligently failed and neglected to control and operate its said car so as to avoid coming in contact with the said automobile, but carelessly ran said car into said automobile."

This is a clear cut charge of negligence concerning which there ought not to be much conflict of testimony, yet there is such conflict not only between the testimony offered by the plaintiff and that offered by the defendant, but also in the testimony of the witnesses on either side.

Mrs. Fiscus, a witness called by the plaintiff, testified that while standing on the steps in front of her house on the east side of Vine street she saw the automobile collide with a Norwood car; that defendant's car was at the time about seventy-five feet south of the automobile, and continued slowly up the hill until stopped about fifteen feet south of the automobile, from which the burning gasoline flowed down the hill and set fire to the car. This testimony does not support plaintiff's theory of the case, and is discredited by the testimony of her sister, who was next called by the plaintiff, and said that they were both in the house when the collision took place and when them came out the car was burning.

The Nulsen sisters (called by plaintiff), who were in the automobile, were unable to state whether the Millcreek Valley car operated by the defendant collided with the automobile, although very close to it when stopped. One of them testified that defendant's car "was just turning the curve" when the collision between the Vine and Norwood car happened, which she estimated to be seventy-five or eighty feet away, whereas by actual measurement it was more than seven hundred feet. Her inability to accurately state the distance is excusable, but her statement that the car "was just turning the curve" is not supported by any other testimony.

The motorman on the Vine-Norwood car testified that after the automobile struck his car he looked around and the automobile and the other car "hit while I was looking." And again, "but

the cars were so close together that the other crash came almost instantly.'' The witness, Keys, called by the defendant, was a passenger on the Millcreek Valley car, sitting in the second seat from the front on the left hand side, and testified upon cross-examination as follows:

''Q.    Then if there was a collision between the automobile and the Vine-Norwood car, you didn't see it?  A. Well I saw it just as that happened, but I didn't see the car before.
''Q.    I see.    The first that you really knew was when your car, that is, the Millcreek Valley car, was within five feet of the automobile?   A. Yes, sir.
''Q.    And your car, you think, ran up and touched the automobile?   A. Well rather the automobile ran down and touched the car.
''Q.    The automobile was still running, was it?   A. The car stopped first according to my recollection.''

The natural explanation of this testimony from all the evidence is that the automobile was thrown against the Millcreek Valley car by the Vine-Norwood car which the witness did not, at that moment, see.

There is, however, very little conflict in the testimony of the passengers on the Vine-Norwood car, which, being open, afforded a better opportunity for accurate observation, and is in substance that the automobile in the attempt to pass in front of the Vine-Norwood car struck it near the front part, and that the collision with the defendant's car, if any, was almost instantly thereafter.    There is of course testimony tending to sustain the charge of negligence; but the great weight of the evidence is against it.

The attempt of the driver of the automobile to pass in front of the Vine-Norwood car was wholly unnecessary and so reckless that the motorman on defendant's car could not reasonably anticipate that he would make such attempt.

The defendant offered in evidence an ordinance of the city of Cincinnati providing that vehicles shall keep to the right hand side of the street and near the curb, so as to give those moving at greater speed the use of the central part of the street.    Why this ordinance was introduced by the defendant does not ap-

pear; but counsel for plaintiff seek to thereby excuse the chauffeur for his failure to pass the defendant's car on the left hand side of the street.   The proper observance of a city ordinance is in itself, of course, commendable; but we fail to see how the motorman could anticipate that, while the chauffeur would duly obey the city ordinance, he would at the same time violate every rule of common sense, and thereby risk not only his own life but a score of other lives.   The verdict of the jury appears to have been the result of sympathy with the plaintiff, or prejudice against the defendant, and ought not to stand.   The judgment will therefore be reversed and the cause remanded for a new trial.